## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

Kaylan F.,                                                  No. 22-cv-2148 (DLM)

        Plaintiff,

v.

                                                  **ORDER**

Kilolo Kijakazi,
Acting Commissioner
of Social Security,

        Defendant.

        Pursuant to 42 U.S.C. § 405(g), Plaintiff Kaylan F. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for benefits. This matter is before the Court on the parties' cross-motions for summary judgment. (Docs. 11–13 (Plaintiff's Motion and Supporting Memorandum), 18–19 (Commissioner's Motion and Supporting Memorandum).) For the reasons below, the Court grants in part and denies in part Plaintiff's Motion for Summary Judgment, grants in part and denies in part the Commissioner's Motion, and orders that the matter be remanded for further proceedings consistent with this opinion.

## BACKGROUND

On April 3, 2020, Plaintiff applied for Supplemental Security Income ("SSI") alleging she had been disabled since October 4, 2019. (Tr.[1] at 219–24.) The Social Security Administration ("SSA") denied her claim initially (Tr. at 60–73), and upon reconsideration (Tr. at 112–14). Plaintiff then timely requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on the matter on October 28, 2021. (Tr. at 116–18 (Appeal), 27–59 (Hearing Transcript).) Plaintiff was represented by counsel at the hearing and testified on her own behalf. (Tr. at 29, 32–42.) Plaintiff's mother also testified, (Tr. at 43–47), as did a medical expert, (Tr. at 48–52), and vocational expert, (Tr. at 53–55). The medical expert testified that he did not believe Plaintiff met any listed impairment[2] and that treatments for Plaintiff's disorders existed, but further testified that he could not render a complete opinion based on the existing record. (Tr at 48–52.) The vocational expert testified that the national economy contained jobs suitable for a person with physical and mental limitations similar to Plaintiff's. (Tr. at 53–55.) Plaintiff's attorney questioned both the medical expert, (Tr. at 51–52), and the vocational expert, (Tr. at 55–56).

On November 4, 2021, the Commissioner sent notice of an unfavorable decision to Plaintiff. (Tr. at 8–26.) The ALJ recognized that Plaintiff suffered from several severe

---

[1] The Commissioner filed the consecutively paginated transcript of the administrative record on November 4, 2022. (Doc. 9.) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the cited document rather than docket page number or exhibit number.

[2] Listed impairments, or "Listings," are impairments for each major body system that are severe enough that a person would be prevented from engaging in any gainful activity. *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

impairments, including obsessive compulsive disorder ("OCD"), generalized anxiety disorder, and autism spectrum disorder. (Tr. at 13.) Additionally, the ALJ acknowledged that Plaintiff had one non-severe impairment, gastroesophageal reflux disease ("GERD"). (*Id.*)

Despite Plaintiff's mental and physical impairments, the ALJ found that she did not qualify for benefits. (Tr. at 22.) First, the ALJ determined that neither any single impairment, nor any impairments in combination, triggered an automatic finding of disability based on the SSA's Listings. (Tr. at 14–15.) Such a trigger would occur under the regulations where the ALJ found Plaintiff to have one extreme or at least two marked limitations in the categories relating to her mental impairments. (*Id.*) Instead, the ALJ found that Plaintiff had a mild limitation in understanding, remembering or applying information; a moderate limitation in concentrating, persisting, or maintaining pace; a moderate limitation in adapting or managing herself, and a marked limitation in interacting with others. (*Id.*) Thus, rather than finding her disabled at that point in the analysis, the ALJ moved on to consider her capacity to work despite her impairments. The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, so long as the workplaces required: no high, exposed places or dangers to life or limb; no more than occasional changes to Plaintiff's workplace setting; no public interactions; only brief and superficial interactions with supervisors/co-workers; no complex decision-making; and no rapidly paced work such as assembly lines. (Tr. at 15–16.) In reaching this conclusion, the ALJ credited the testimony of the vocational expert that at least three representative occupations listed in the Dictionary of Occupational

Titles ("DOT") could be performed by a person with similar limitations to Plaintiff: hand packager (DOT 920.587-018); stores laborer (DOT 922.687-058); and machine packager (DOT 920.685-078). (Tr. at 21.) Because sufficient jobs in the national economy existed for someone with Plaintiff's limitations, the ALJ found her not disabled under the evaluative process set forth in 20 C.F.R. § 416.920. (Tr. at 22.)

Plaintiff timely requested that the Appeals Council ("AC") review the ALJ's decision, (Tr. at 212–15), and submitted additional arguments, (Tr. at 311–17). On July 5, 2022, the AC denied Plaintiff's review request, making the ALJ's decision the final decision of the Commissioner. (Tr. at 1–5.)

Plaintiff challenges four aspects of the ALJ's decision. First, Plaintiff argues that substantial evidence in the record does not support the ALJ's determination that Plaintiff has only a moderate limitation in her ability to concentrate, persist, or maintain pace. Specifically, she contends the record establishes that her OCD causes her to suffer from frequent, intrusive compulsions that cause her to spontaneously refocus her time and energy on completing a self-assigned ritual instead of the activity at hand. Second, Plaintiff argues that substantial evidence in the record fails to support the ALJ's conclusion that Plaintiff suffers from only a moderate limitation in her ability to adapt or manage herself. Plaintiff points out that she receives extensive supervision and support from her mother that would be unavailable to her in a workplace environment, and that her highly supported functionality at home is not translatable to her hypothetical workplace functionality. Third, Plaintiff contends that substantial evidence in the record does not support the ALJ's finding that the testifying medical expert's opinion was partially persuasive. Plaintiff argues that

the medical expert admitted that his opinion was unfounded because he did not have a "good sense" of some facts of Plaintiff's case—including the severity of her condition—suggesting that he either did not have, or did not review, the record evidence in this case before giving his testimony. And finally, Plaintiff argues that the ALJ legally erred by disregarding evidence that her mental disorders produce barriers to treatment, instead finding that her disorders are treatable and thus not disabling. Her argument relies on § 12.00 of 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing 12.00"), which counsels that evidence of available treatments cannot provide a basis for denying a disability claim where inconsistent treatment or noncompliance with treatment is a feature of a plaintiff's mental disorder.

## ANALYSIS

This Court reviews an ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision is infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1089 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to determine whether it contains sufficient evidence to support the ALJ's conclusion. *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). If substantial

evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089. But if an ALJ used erroneous legal standards, or if they incorrectly applied the law, those are legal error subject to de novo review. *Joel M. B. v. Kijakazi*, No. 21-cv-1660 (PAM/ECW), 2022 WL 1785224, at *2 (D. Minn. June 1, 2022) (citing *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011)); *Michael B. v. Kijakazi*, No. 21-cv-1043 (NEB/LIB), 2022 WL 4463901, at *1 (D. Minn. Sept. 26, 2022).

Plaintiff does not contest that the ALJ followed the five-step sequential process laid out in 20 C.F.R. § 416.920(a)(4)[3] for evaluating SSI claims. Rather, she asserts that because of four errors at steps three and four, the ALJ reached an inaccurate RFC that improperly disregarded Plaintiff's limitations from her OCD. The Court will consider each of these challenges in turn.

---

[3] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under appendix 1 to Subpart P of Part 404. 20 C.F.R. § 416.920(a)(4)(iii). If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and determine (at step four) whether the claimant can still do their past work given their limitations. 20 C.F.R. § 416.920(a)(4)(iv). Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v).

**I.**     **The record lacks sufficient development on concentration, persistence, and ability to maintain pace.**

The ALJ found that Plaintiff had only a moderate limitation in concentrating, persisting, or maintaining pace. (Tr. at 14.) He supported his conclusion by pointing to record evidence from medical professionals, including Kevin M. Schumacher, Ph.D., L.P., who testified that Plaintiff would have no limitations in this area, although he later admitted he could not say for sure on this record; Jay Phillippi, Ph.D., L.P., who noted Plaintiff's attention appeared adequate to perform various number recall activities; and Kimberly B. Steiner M.D., who noted that Plaintiff had good impulse control and appropriate attention span. (*Id.*) The ALJ also looked to Plaintiff's subjective reports, including that she could perform activities including reading, watching television, writing, drawing, playing video games, and caring for virtual pets. (*Id.*) Based on the medical and subjective evidence, the ALJ concluded that "[Plaintiff's] obsessive behaviors would likely interfere with pace on a moderate basis." (Tr. at 15.)

Plaintiff argues that the ALJ's determination is inconsistent with the record, which shows her OCD uncontrollably disrupts her focus and her ability to maintain pace to finish tasks. To support her position, she relies on record evidence of her compulsive handwashing and showering, obsessions with cleanliness that compel her to spend hours each day on laundry because she feels unable to sleep on bedding more than once, and her completion of lengthy, self-imposed checklists of obsessive tasks—some of these on the internet. (Tr. at 41–45, 250, 252, 270–72, 362–64, 395–98, 673–75, 711–19.)

For her part, the Commissioner responds that substantial evidence in the record supports the ALJ's conclusion at step three that Plaintiff had only a moderate limitation in concentrating, persisting, or maintaining pace. The Commissioner argues that Plaintiff's record citations are from 2016 medical visits, or from her own or her mother's subjective statements, and do not establish her greater limitations during the relevant period concerning her inability to concentrate, persist, or maintain pace. The Commissioner also contends that the state agency psychologists who reviewed the record evidence found Plaintiff had only a moderate limitation in this functional area, (Tr. 15, 20, 65, 68–69, 84, 88–91), and that this accords with Plaintiff's mental status examinations, (Tr. 20, 520–21, 667, 683, 685, 718, 736, 767, 772).

As noted above, "substantial evidence" is enough evidence that reasonable minds would accept the conclusion reached as supportable. *Biestek*, 139 S. Ct. at 1154. The question here is whether reasonable minds would accept, on this record, the ALJ's conclusion that Plaintiff had no more than moderate limitations in her concentration, persistence, or pace due to her impairments. Evaluating the degree of functional limitations associated with mental impairments requires an ALJ to consider "available clinical signs and laboratory findings, the effects of [a plaintiff's] symptoms, and how [their] functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment." 20 C.F.R. § 416.920a(c)(1). The ALJ uses a five-point scale to rate functionality (none, mild, moderate, marked, and extreme). *Id.* § 416.920a(c)(4). "Moderate" functional limitations are just what they seem: less than "marked" but more than "mild." *Id.*; *see also, e.g.*, *Roberson v. Astrue*, 481 F.3d 120, 1024–

25 (8th Cir. 2007) (defining "moderate" as "not prevent[ing] an individual from functioning 'satisfactorily'"); *Lacroix v. Barnhart*, 465 F.3d 881, 888 (8th Cir. 2006) (defining someone with moderate limitations as being "able to function satisfactorily").

The Court finds that the record is not sufficiently developed to support the ALJ's conclusions about Plaintiff's limitations on concentration, persistence, and ability to maintain pace. The ALJ relied on three medical evaluations of Plaintiff in reaching his decision, and the Court will review each in turn. First, the ALJ credited Dr. Phillippi's evaluation of Plaintiff, but during that same visit Dr. Phillippi concluded that Plaintiff "demonstrates a lack of optimal capacity to sustain adequate employment" because of "psychological limitations." (Tr. at 511.) There are similar issues raised by the ALJ's citation to Dr. Steiner's medical evaluation of Plaintiff. Dr. Steiner observed that Plaintiff's thought content showed her "obsessions [were] apparent" and her attention span, while "appropriate to the conversation" (as the ALJ expressly quoted), was "*not specifically tested*[.]" (Tr. at 717–18 (emphasis added).) In fact, Plaintiff's reason for seeing Dr. Steiner was "for help with efficiency/focus" so that she could increase the pace of her OCD-imposed tasks to "leave more time for other hobbies/sleep." (*Id.* at 718.) Dr. Steiner determined that Plaintiff's "checklist" of OCD-imposed tasks "would otherwise inhibit her functioning in any gainful activities[.]" (*Id.*) He suggested that "psychotherapy" and "very gradual exposure type work" on a symptom-by-symptom basis could improve Plaintiff's functionality, but noted that when Plaintiff had engaged in such treatment measures before to alleviate a single compulsion (her compulsive toothbrushing), it had been so "taxing"

that Plaintiff had not yet felt able "to tackle other obsessions/compulsions with a similar strategy." (*Id.*)

Such contradictory evidence to the ALJ's determination, while troubling, may not merit reversal. *See Biestek*, 139 S. Ct. at 1154 (holding courts "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [they] may have reached a different outcome"). Yet the Court cannot overlook the fundamental problem raised by the ALJ's reliance on Dr. Schumacher—the medical expert who testified at the hearing about Plaintiff's concentration, persistence, and ability to maintain pace. Dr. Schumacher admitted his opinion on this subject was based on insufficient evidence. Specifically, concerning Plaintiff's limitations in concentration, persistence, and ability to maintain pace, the ALJ credited Dr. Schumacher statement at the hearing that "I don't see any objective evidence in the record that [Plaintiff] has impairments in that area." (Tr. at 50.) Yet Dr. Schumacher later testified that "[he did not] get a good sense from the record about the severity of the compulsive behaviors, things like showering and handwashing" in terms of its duration, whether it causes new health problems, or whether it interferes with Plaintiff's ability to leave her home. (Tr. at 50–51.) Such testimony is highly relevant to whether Plaintiff can concentrate, persist, or maintain pace on tasks other than her compulsive behaviors—such as workplace tasks—because it demonstrates that the answer cannot be derived from the existing record by an expert in mental health disorders, let alone the ALJ. The ALJ admitted this, noting that "[Dr. Schumacher] did not get a good sense of the compulsive behaviors from the record (written)" and that "[he] is an expert in the field

of mental health and does have experience in evaluating impairments under the regulations." (Tr. at 16.)

No amount of harmonizing statements the ALJ made—or bolstering of this evidentiary gap by marshaling other evidence—permits the Court to overlook clear evidence that the record is not sufficiently developed. Plaintiff points out this very issue in her third argument and asks the Court to find that the ALJ should not have found the medical expert partially persuasive where the expert admitted his insufficient basis upon which to give an opinion. The Court agrees with Plaintiff on her third argument and finds that substantial evidence does not support the ALJ's conclusion that Dr. Schumacher's testimony was partially persuasive. Where the record lacks development sufficient for a medical expert to render an opinion—per Dr. Schumacher's own admission here, (Tr. at 50–51)—the resulting opinion necessarily suffers from a lack of substantial evidence because a finding of substantial evidence should be based on a sufficiently developed record. *See, e.g.*, *James R. D. v. Saul*, No. 19-cv-989 (BRT), 2020 WL 5764317, at *9 (D. Minn. Sept. 28, 2020) ("The Court finds that based on the further developed record as a whole, there is substantial evidence . . . ."); *Battles v. Kijakazi*, No. 21-cv-2092 (CDC), 2022 WL 1671859, at *2 (W.D. Ark. May 25, 2022) ("this case was decided based upon a well-developed record and was supported by substantial evidence").

The SSA's disability determination process is non-adversarial, *see Noerper v. Saul*, 964 F.3d 738, 747 (8th Cir. 2020), and this has resulted in the "[w]ell-settled precedent . . . that the ALJ bears a responsibility to develop the record fairly and fully, independent of the [plaintiff's] burden to press [their] case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th

Cir. 2004) (citing *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000); *Landess v. Weinberger*, 490 F.2d 1187, 1188 (8th Cir. 1974)). This is true even where, as here, a plaintiff is represented by counsel. *Id.* (citing *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983)). Here, given Dr. Schumacher's own testimony that he was ill-equipped to answer the hypothetical due to a dearth of information, the Court finds that the record before the ALJ was inadequately developed."

Finding that the record is inadequately developed, the Court remands this matter for further development of the record as to Plaintiff's concentration, persistence, and ability to maintain pace given her compulsive behaviors, their frequency and duration, any resulting health impacts they cause, and their interference with Plaintiff's ability to leave her home—including, but not necessarily limited to—showering, handwashing, and other hygiene-focused compulsions.

## II. Sufficient evidence supports the ALJ's determination on adapting and managing oneself.

While Plaintiff's arguments above demonstrate reversal is warranted here, to be thorough, the Court next considers the ALJ's finding that Plaintiff had only a moderate limitation in adapting or managing herself. (Tr. at 15.) The ALJ supported this conclusion by pointing to record evidence from medical professionals—again Dr. Schumacher and Dr. Phillippi—that Plaintiff had mild limitations because of her dependence on people in her life (according to Dr. Schumacher) but presented as neat and clean at a medical appointment (according to Dr. Phillippi). (*Id.* (citing Tr. at 246, 510).) The ALJ also credited Plaintiff's subjective reports that she could manage her personal care, basic meals,

housework, and personal banking. (*Id.* (citing Tr. at 246–47, 274).) Based on the medical and subjective evidence, the ALJ concluded that "[o]verall, . . . moderate limits are supported." (*Id.*)

Plaintiff argues that the record evidence contradicts the ALJ's allegedly cherry-picked evidentiary basis for finding only a moderate limitation in this functional area. Specifically, she argues that the record demonstrates that she is monitored by, and receives daily functional supports from, her mother—all within a special home context that does not equate to a workplace setting. (Tr. at 50, 245, 332–36.)

For her part, the Commissioner responds that substantial evidence in the record supports the ALJ's conclusion at step three that Plaintiff had only a moderate limitation in adapting and managing herself. The Commissioner argues that Plaintiff admitted to having gainful (even if not substantially gainful) functional abilities, citing Plaintiff's admissions that she could perform personal care, prepare food, engage in household tasks, manage her own finances, use the internet, and perform past work activities, (Tr. at 15, 18, 246–47, 273). The Commissioner further contends that this evidence accords with evaluations by Drs. DeSantis and Sullivan—the state psychologists—finding no more than moderate limitations in this functional area, (Tr. at 15, 20, 65, 68–69, 84, 88–91), which aligns with other medical evaluations in the record, (Tr. at 20, 520–21, 667, 683, 685, 718, 736, 767, 772).

As discussed before, "substantial evidence" is enough evidence that reasonable minds would accept the conclusion reached as supportable. *Biestek*, 139 S. Ct. at 1154. The question here is whether reasonable minds would accept, on this record, the ALJ's

conclusion that Plaintiff had no more than moderate limitations in her ability to adapt and manage herself. *See* 20 C.F.R. § 416.920a(c)(1), (4); *Roberson*, 481 F.3d at 1024–25; *Lacroix*, 465 F.3d at 888.

Having considered both evidence that supports and detracts from the ALJ's decision, *see Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011), the Court finds that substantial evidence in the record supports the ALJ's determination that Plaintiff has no more than moderate limitations in adapting and managing herself. Under the required deferential standard of review, even where "some evidence supports a conclusion other than that reached by the ALJ[,]" *id.* (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)), there is still a sufficient evidentiary basis to find for the Commissioner on this issue.

Even so, the Court has some concerns about Dr. Sullivan's opinion on Plaintiff's ability to adapt. Concerning adaptability, Dr. Sullivan stated that, among other things, Plaintiff has "intact hygiene, perhaps to a fault[.]" (Tr. at 91.) It is unclear to the Court whether, or how much, sufficiently developed record evidence about the characteristics and impacts of Plaintiff's compulsive hygienic activities might impact the ALJ's analysis of Plaintiff's adaptability and ability to manage herself. The Court has already found additional development of the record is warranted concerning Plaintiff's hygienic compulsions. Therefore, the Court orders that, upon remand, and after sufficient development of the record as to the characteristics and impacts of Plaintiff's hygiene-related compulsions, the ALJ reconsider the limitations as to both adaptability and ability to manage herself, as well as concentration, persistence, and ability to maintain pace, to

ensure that substantial evidence supports—or continues to support—the resulting limitations found.

### III.    The ALJ legally erred in finding that Plaintiff's illness is treatable and thus not disabling.

The ALJ found that although Plaintiff claimed she could not engage in treatment for her impairments because of those impairments, her assertion "[was] not supported by th[e] record." (Tr. at 19.) The ALJ pointed to record evidence that Plaintiff has resisted treatment; that her noncompliance with treatment has been enabled by her mother; that Plaintiff claimed to enjoy her compulsive behaviors and did not want to stop them; that Plaintiff has engaged in past therapy, during which she exhibited good moods, fair eye contact, less handwringing, more free engagement, no abnormal motor movements, and stable symptoms; that Plaintiff has cooperated with and attended to medical professionals; that she did not demonstrate signs like pressured speech or an inability to interact with those professionals; that one medical professional found Plaintiff's failure to pursue treatment was volitional; and that treatment helped with compulsions such as frequent handwashing. (Tr. at 19.) The ALJ further supported his unfavorable decision by noting that Plaintiff received minimal outpatient care, (Tr. at 15, 18); that a medical provider had recommended that Plaintiff restart her medications targeting OCD symptoms, but Plaintiff asked for time to research before agreeing, (Tr. at 17); and that although Plaintiff had found therapy and Prozac beneficial for her symptoms previously, she had stopped taking the medications, transferred several times between therapy providers, attended only a few therapy sessions with the various providers, and now has no apparent treatment underway,

15

(Tr. at 18). Based on this evidence, the ALJ concluded that "[t]his is a course of treatment inconsistent with the claimant's allegations[,]" (*id.*), despite noting Dr. Schumacher's testimony that "[t]he claimant may avoid treatment due to her impairments[,]" (Tr. at 16).

Plaintiff argues that the ALJ legally erred by considering her lack of medical treatment in denying her disability claim where such consideration goes against the analysis required by SSA regulation. She contends that although the ALJ found Dr. Schumacher's testimony partially persuasive, the ALJ apparently disregarded the portion of Dr. Schumacher's opinion that individuals suffering from OCD often avoid what gives them anxiety—including treatment. (Tr. at 51–52.) Because record evidence suggested Plaintiff's avoidance of treatment is part of her disorder, she argues that the ALJ should have factored her disorder's characteristic of noncompliance with treatment into his analysis pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1. That Subpart at Listing 12.00 for "Mental Disorders" states that

> [the SSA] will consider periods of inconsistent treatment or lack of compliance with treatment that may result from your mental disorder. If the evidence indicates that the inconsistent treatment or lack of compliance is a feature of your mental disorder, and it has led to an exacerbation of your symptoms and signs, we will not use it as evidence to support a finding that you have not received ongoing medical treatment as required by this paragraph.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(G)(2)(b).

For her part, the Commissioner argues that the ALJ relied on evidence that Plaintiff could have complied with treatment options yet chose not to. Specifically, the Commissioner notes that Plaintiff's mother allowed Plaintiff to pursue less treatment, and that Plaintiff showed reluctance to pursue treatment even though it had previously helped.

(Tr. at 17–19, 649, 650, 652–53, 714, 718.) The Commissioner contends that disability

cannot be found when a Plaintiff could pursue medical treatments to improve their

condition but elects not to. She also suggests that Plaintiff may be attempting to present

herself in a worse light by not receiving treatment in order to obtain disability benefits.

Finally, the Commissioner asserts that Plaintiff has the burden to demonstrate error is

present and has failed to meet that burden.

It is true that a plaintiff who can pursue potentially employment-enabling

treatment—but declines to do so without a good reason—is not entitled to benefits. *See,*

*e.g.*, *Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) (stating that "if a plaintiff's

symptoms are controlled or treatable with medication, the plaintiff cannot be considered

disabled") (citing *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004)). Social Security

Ruling ("SSR") 18-3p explains the circumstances under which "[an] individual has good

cause for not following the prescribed treatment." SSR 18-3p. The effect of a plaintiff's

mental illness is not listed among such "good causes," however, noncompliance with

mental health treatments falls into the SSR's catchall provision[4] and may be "result of [the]

mental impairment [itself] and, therefore, neither willful nor without a justifiable excuse."

*Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009) (quoting *Mendez v. Chater*, 943 F.

Supp. 503, 508 (E.D. Pa. 1996); citing *Frankhauser v. Barnhart*, 403 F. Supp. 2d 261, 277–

---

[4] SSR 3-p notes that one "example[] of [an] acceptable good cause reason[] for not following prescribed treatment" is "Other: If the individual offers another reason for failing to follow prescribed treatment, we will determine whether it is reasonably justified on a case-by-case basis." SSR 3-p(C)(2)(9).

78 (W.D.N.Y. 2005) (holding an ALJ must account for whether a plaintiff suffering mental illness failed to comply with prescribed treatments because of that illness); *Brashears v. Apfel*, 73 F. Supp. 2d 648 650–52 (W.D. La. 1999) (remanding the matter to the SSA to determine whether the plaintiff's noncompliance with prescribed treatments was excusable due to their mental illness)).

Here, the ALJ points to evidence in the record that providers prescribed treatments for Plaintiff's OCD, that Plaintiff sometimes engaged in such treatments followed by improvements to her condition, but that she demonstrated an unwillingness to continue following those treatments consistently and throughout the relevant period for her disability application. (Tr. at 15–19.) These circumstances are similar to those in *Pate-Fires* where the ALJ had also pointed to evidence that the plaintiff knew taking her medications could improve her condition and so lacked a good reason for her medical noncompliance. 564 F.3d at 945. The Eighth Circuit found, to the contrary, that the ALJ's analysis omitted an important step pursuant to regulation because "the ALJ failed to make the critical distinction between [the plaintiff's] awareness of the need to take her medication and the question [of] whether her noncompliance with her medication was a medically-determinable symptom of her mental illness." *Id.*

The same holds true here. The regulations require that, pursuant to Listing 12.00, the ALJ make a finding about *whether* treatment inconsistency or noncompliance is a feature of Plaintiff's mental disorder(s). If the answer is no, then the inconsistent treatment or noncompliance with treatment can provide a basis for an unfavorable decision. But if the answer is yes, then the ALJ cannot base his decision on record evidence of available

treatments not pursued—here, the very evidence relied on, at least in part, in reaching a

decision. As a result, the Court remands the case to the Commissioner to determine whether

Plaintiff's treatment inconsistency and noncompliance is a feature of her mental

disorder(s).

Accordingly, based on the above, as well as the files, records, and proceedings

above, **IT IS ORDERED** that:

1.  Plaintiff's Motion for Summary Judgment (Doc. 11) is **GRANTED** in part and **DENIED** in part;

2.  Defendant's Motion for Summary Judgment (Doc. 18) is **GRANTED** in part and **DENIED** in part; and

3.  The matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED:  July 7, 2023                    _s/Douglas L. Micko_
                                        DOUGLAS L. MICKO
                                        United States Magistrate Judge